# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**WHOLESALE PARTNERS, LLC,**

    Plaintiff,

  -vs-                              **Case No. 12-C-747**

**MASTERBRAND CABINETS, Inc.,**

    Defendant.

---

## DECISION AND ORDER

This is a diversity action[1] for breach of contract and violation of the Wisconsin Fair Dealership Law ("WFDL"), Wis. Stat. §§ 135.01, et seq. Now before the Court are cross-motions for summary judgment. These motions are denied.

### BACKGROUND

MasterBrand Cabinets, Inc. is a kitchen and bathroom cabinet company. Headquartered in Indiana, MasterBrand sells a spectrum of cabinetry products under various brand names, such as Kemper, Aristokraft and Decorá. MasterBrand delivers its products through a network of over 5,000 dealers nationwide. MasterBrand's website states that "Only authorized dealers can sell [MasterBrand] products to customers." According to MasterBrand, dealers provide invaluable services, as they

---

[1] ECF No. 6, Amended Notice of Removal.

[2] *Ziegler Co. v. Rexnord*, 407 N.W.2d 873, 879-80 (Wis. 1987) (listing factors courts should examine to "determine whether the grantor and grantee have a continuing financial interest in the business relationship and whether the business relationship is so interdependent that there is a community of interest," including "how long the parties have dealt with each other; . . .").

[3] While many cases speak in terms of gross revenue instead of gross profit, both concepts are

must measure your space, assist with design, order the products and arrange for installation. Dealers stand behind the product, addressing any challenges that may arise. Such service can only be accomplished at a local level as it takes a partner to find the proper cabinet.

Beginning in 2009, MasterBrand had a dealership relationship with Laminated Products, Inc. ("LPI") in Kenosha, Wisconsin. LPI was not a profitable company at this time. To help with its financial difficulties, LPI retained a financial consultant named James Biehl, who had experience working with financially distressed companies. Mr. Biehl was also a consultant for a company called Granite & Stone Design, LLC. Granite & Stone was formed by James Dorman and his son, James Jr., in 2008. Located in Brookfield, Wisconsin, Granite & Stone sold, fabricated and installed natural stone products. In 2010, Granite & Stone acquired LPI's stone manufacturing division. Granite & Stone moved its Brookfield operations to Kenosha, where it leased a portion of LPI's facility.

The Dormans believed that LPI's near-bankruptcy, combined with another local MasterBrand dealer going out of business, presented an excellent business opportunity to set up a MasterBrand dealership that could serve both the greater Milwaukee area and also Kenosha, Racine, and Illinois. Becoming a MasterBrand dealer would also allow the Dormans to build upon their existing Granite & Stone countertop business, as customers looking to purchase bathroom or kitchen cabinetry were typically also looking to purchase countertops.

Accordingly, the Dormans formed Wholesale Partners in November, 2010 for the sole purpose of becoming a MasterBrand dealer.  The Dormans' plan was to take over LPI's dealership.  Wholesale Partners hoped to sell MasterBrand products from two locations:  a West Allis store and a store at the existing LPI facility in Kenosha.  Wholesale Partners leased a storefront in West Allis, hired two salesmen with years of experience selling MasterBrand cabinets, and obtained an $80,000 economic development loan from the City of West Allis.  James, Sr. provided a personal guarantee for that loan.  James, Sr. also attempted to acquire LPI's assets and reached a tentative deal with LPI's main secured creditor, Johnson Bank, but the deal eventually fell through.

Wholesale Partners opened for business in February or March of 2011 and began selling MasterBrand cabinets from its West Allis location.  Wholesale Partners advertised that it was an "Authorized Dealer" of MasterBrand's various product lines.  Wholesale Partners also used MasterBrand's in-store selling centers, product literature, logos and marketing materials.  Wholesale Partners had access to MasterBrand's proprietary, confidential software that allowed it to make three dimensional renderings of MasterBrand cabinets for customers and to price their products.  On the MasterBrand website, Wholesale Partners was listed as one of MasterBrand's dealers.

At some point, Wholesale Partners and MasterBrand began discussions about transferring LPI's dealership to Wholesale Partners.  By April 29, 2011, Wholesale Partners asked MasterBrand to transfer the LPI dealership.  In return, Wholesale

Partners agreed to accept financial responsibility for LPI's $186,000 debt to MasterBrand. Subsequent discussions took place over the next six weeks where Wholesale Partners and MasterBrand further discussed and negotiated the contours of a relationship.

On June 1, 2011, Granite & Stone agreed to purchase the assets of LPI's outlet retail business in Kenosha, including LPI's customer lists. Granite & Stone purchased the assets as LPI owed it money for unpaid orders, and the purchase price was basically the $36,568 debt LPI owed Granite & Stone. The Dormans made this purchase, and subsequently leased space from LPI, to implement their ongoing discussions with MasterBrand to maintain a presence in Southeastern Wisconsin and transfer the LPI dealership to Wholesale Partners. Wholesale Partners then began selling MasterBrand cabinets in Kenosha and West Allis.

On June 9, 2011, MasterBrand and Wholesale Partners met at James, Sr.'s Milwaukee office. During that meeting, MasterBrand agreed to transfer the LPI dealership to Wholesale Partners, and Wholesale Partners agreed to become financially responsible for LPI's $186,000 debt. MasterBrand transitioned the LPI dealership to Wholesale Partners immediately following that meeting. On June 15, MasterBrand sent Wholesale Partners a letter assigning it a dealer number and stating: "Dear Mr. Dorman: I would like to welcome you to the MasterBrand Cabinets Family!"

Subsequently, Wholesale Partners began to pay money towards the LPI debt. In July of 2011, James, Sr. loaned Wholesale Partners approximately $130,000 to

- 4 -

purchase inventory, such as MasterBrand cabinets, and for payroll. Wholesale Partners also began looking at new locations for a store in Kenosha.

On September 23, 2011, MasterBrand told Wholesale Partners in a telephone call that it was immediately terminating Wholesale Partners as a dealer. MasterBrand provided no prior written notice of termination. Nor did it give written notice of a problem with Wholesale Partners' account or any written notice of an alleged breach of the dealership agreement. MasterBrand did not allow Wholesale Partners an opportunity to cure an alleged breach. MasterBrand told Wholesale Partners that it had two weeks to enter any pending sales, after which Wholesale Partners would not be able to place any further orders for MasterBrand products. Direct sales of MasterBrand cabinets drove the business and accounted for at least 43% of Wholesale Partners' gross profits in 2011. Having suddenly lost the MasterBrand dealership, and having no time to locate an alternative, replacement dealer of cabinets, Wholesale Partners lost commercial viability and ceased doing business.

## ANALYSIS

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The plain language of the rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must accept as true the evidence of the nonmovant and draw all justifiable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate only if, on the record as a whole, a rational trier of fact could not find for the non-moving party. *Rogers v. City of Chi.*, 320 F.3d 748, 752 (7th Cir. 2003). When confronted by cross-motions for summary judgment, "inferences are drawn in favor of the party against whom the motion under consideration was made." *McKinney v. Cadleway Prop., Inc.*, 548 F.3d 496, 500 (7th Cir. 2008). The Court considers each party's motion individually to determine if that party has satisfied the summary judgment standard. *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d 557, 583-84 (N.D. Ind. 2010).

The WFDL was enacted "to promote the public's interest in the relationships between dealers and grantors, and to protect dealers against unfair treatment by grantors, who may use their superior economic and bargaining powers to the disadvantage of small business." *Brio Corp. v. Meccano S.N.*, 690 F. Supp. 2d 731, 739 (E.D. Wis. 2010). The threshold inquiry is whether Wholesale Partners is a "dealer," which is a "person who is a grantee of a dealership situated in this state." Wis. Stat. § 135.02(2). A dealership requires:

   1. A contract or agreement, either express or implied, whether oral or written, between 2 or more persons;

   2. by which a person is granted the right to sell or distribute goods or services, or use a trade name, trademark, service mark, logotype,

>   advertising or other commercial symbol;
>
>   3.   in which there is a community of interest in the business of offering, selling or distributing goods or services at wholesale, retail, by lease, agreement or otherwise.

*Van Groll v. Land O'Lakes, Inc.*, 310 F.3d 566, 568 (7th Cir. 2002) (citing § 135.02(3)(a)).

As an initial matter, Wholesale Partners argues that it is entitled to summary judgment because MasterBrand judicially admitted that it "treated Plaintiff as its dealer on a temporary basis." ECF No. 4, Answer at ¶¶ 16-18. "Judicial admissions are formal concessions in the pleadings, or stipulations by the party or its counsel, that are binding upon the party making them." *Help at Home Inc. v. Med. Capital, LLC*, 260 F.3d 748, 753 (7th Cir. 2001). This rule applies to admissions of fact, but whether Wholesale Partners can be considered a dealer under the WFDL is a legal conclusion, and "legal conclusions are rarely considered to be binding judicial admissions." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007); *see also Dabertin v. HCR Manor Care, Inc.*, 68 F. Supp. 2d 998, 1000 (N.D. Ill. 1999); *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 681-82 (7th Cir. 2002) (Rovner, J., concurring). In any event, MasterBrand's admission is equivocal, at best. *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 106 F.3d 1388, 1404 (7th Cir. 1997) (binding judicial admissions are "any deliberate, clear and unequivocal statement, either written or oral, made in the course of judicial proceedings"). A dealership under the WFDL requires a community of interest, and the short duration of the parties'

relationship is a relevant factor in that analysis. Thus, MasterBrand's admission that it treated Wholesale Partners as its dealer on a "temporary basis" does not constitute an admission that Wholesale Partners is a "dealer" as that term is defined in the WFDL.

On the other hand, MasterBrand's admission that it treated Wholesale Partners as its dealer strongly suggests, if it doesn't prove, that the parties had some sort of agreement which granted Wholesale Partners the right to sell MasterBrand's goods. The "single most important factor in determining whether an alleged dealer has the right to sell a grantor's goods or services is the dealer's ability to transfer the product itself (or title to the product) or commit the grantor to a transaction at the moment of the agreement to sell." *John Maye Co., Inc. v. Nordson Corp.*, 959 F.2d 1402, 1406 (7th Cir. 1992) (citing *Foerster, Inc. v. Atlas Metal Parts Co.*, 313 N.W.2d 60, 64 (Wis. 1981)). It is undisputed that "Wholesale Partners designed, priced and sold MasterBrand's products to customers and committed MasterBrand to sales of MasterBrand's merchandise, and Wholesale Partners then ordered product through the MasterBrand account and MasterBrand delivered the product." ECF No. 41, Defendant's Response to Plaintiff's Proposed Findings of Fact, ¶ 48. MasterBrand argues that Wholesale Partners failed to meet certain requirements to continue the relationship, but this does not preclude the initial existence of an agreement which authorized the sale of MasterBrand products.

The real issue in this case is whether there was a community of interest between the parties. A community of interest is a "continuing financial interest

- 8 -

between the grantor and grantee in either the operation of the dealership business or the marketing of such goods or services." § 135.02(1). This definition has been characterized as "vague and unhelpful" because it "permits no ready way in which to differentiate a dealership from any ordinary vendor/vendee relationship." *Frieburg Farm Equipment, Inc. v. Van Dale, Inc.*, 978 F.2d 395, 398 (7th Cir. 1992). Nonetheless, the Seventh Circuit cases have "distilled the principles underlying the Wisconsin cases, and provide that a community of interest may exist under one of two circumstances: first, when a large proportion of an alleged dealer's revenues are derived from the dealership, and, second, when the alleged dealer has made sizable investments (in, for example, fixed assets, inventory, advertising, training) specialized in some way to the grantor's goods or services, and hence not fully recoverable upon termination." *Id.* at 399; *accord, Baldewein Co. v. Tri-Clover, Inc.*, 606 N.W.2d 145, 151 (Wis. 2000) ("When a dealer sinks substantial resources into its relationship with a particular grantor—time, money, employees, facilities, inventory, advertising, training—or derives substantial revenue from the relationship (as a percentage of its total), or some combination of the two, the grantor's power to terminate, cancel, or not renew the relationship becomes a substantial threat to the economic health of the dealer and a community of interest can be said to exist").

One factor working against Wholesale Partners, as noted above, is that its relationship with MasterBrand didn't last very long. The length of time the parties

dealt with each other is relevant,[2] but not dispositive. Even though the parties' arrangement was short-lived, Wholesale Partners invested substantial resources, for example, by leasing a storefront, securing an $80,000 business development loan, making payments towards LPI's debt, dedicating $130,000 for payroll and MasterBrand inventory, and hiring salesmen with MasterBrand experience. Some of these investments might be considered recoverable upon termination, but some of them were clearly MasterBrand-specific. *Beloit Beverage Co. v. Winterbrook Corp.*, 900 F. Supp. 1097, 1108 (E.D. Wis. 1995) ("The emphasis is upon recoverability because the purpose of the WFDL . . . is to prevent 'unscrupulous grantor[s]' from engaging in 'opportunistic behavior' by 'exploit[ing] the fear of termination that naturally attends a dealer's investment in grantor-specific assets'") (quoting *Frieburg*, 978 F.2d at 399). Ultimately, Wholesale Partners was formed for the sole purpose of replacing LPI as a MasterBrand dealer, and direct sales of MasterBrand cabinets accounted for 43% of Wholesale Partners' gross profits[3] in its first and only year of existence. The foregoing is more than enough to create an issue of fact as to whether there was a community of interest between the parties. *Frieburg* at 399 ("some combination of revenues and

---

[2] *Ziegler Co. v. Rexnord*, 407 N.W.2d 873, 879-80 (Wis. 1987) (listing factors courts should examine to "determine whether the grantor and grantee have a continuing financial interest in the business relationship and whether the business relationship is so interdependent that there is a community of interest," including "how long the parties have dealt with each other; . . .").

[3] While many cases speak in terms of gross revenue instead of gross profit, both concepts are relevant to the analysis. *See, e.g., Home Prot. Servs., Inc. v. ADT Sec. Servs., Inc.*, 438 F.3d 716, 719 (7th Cir. 2006) (summarizing the *Ziegler* factors, including "what percentage of the gross proceeds or profits of the alleged dealer derives from the alleged grantor's products or services"); *Beloit Beverage* at 1105 ("most or all of the Wisconsin cases have analyzed this issue from a 'gross profits' perspective").

- 10 -

Case 2:12-cv-00747-RTR   Filed 10/04/13   Page 10 of 11   Document 45

investments could manifest a community of interest, even if neither could standing alone").

## CONCLUSION

There are genuine factual disputes in the record as to whether Wholesale Partners and MasterBrand entered into a contract or agreement for the sale of goods in which there was a community of interest. Therefore, both parties' motions for summary judgment [ECF Nos. 22 and 30] are **DENIED**.

Dated at Milwaukee, Wisconsin, this 4th day of October, 2013.

BY THE COURT:

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**